In the Matter of DU BARRY CATERERS, INC., Petitioner, against THOMAS F. BERKERY, Deputy Chief Inspector, Police Department, City of New York, et al., Respondents.

First Department, June 20, 1951.

*Monroe N. Kreisberg* of counsel (*Jacob P. Lefkowitz* with him on the brief; *Harry A. Roth,* attorney), for petitioner.

*Henry J. Shields* of counsel (*Seymour B. Quel* with him on the brief; *John P. McGrath, Corporation Counsel,* attorney), for respondent.

*Per Curiam.* Petitioner has, for eleven years, operated a catering business for weddings, dances, and organization functions. In connection with such activities, it leases meeting rooms to social, civic, fraternal and religious groups.

A subordinate lodge of a responsible national fraternity organization had contracted with petitioner to lease the upper floor of petitioner's premises on the first and third Mondays of each month. On March 19, 1951, one of its regular meeting nights, the lodge held a meeting in the course of which immoral and indecent entertainment was presented. After due notice and hearing, the police department revoked petitioner's two cabaret licenses on the ground that it had permitted its premises to be used for unlawful purposes.

The record affirmatively shows that no representative of petitioner was present during the obscene performance. More-

over, the record fails to disclose evidence that petitioner was ever apprised of the type of performance that was to be conducted by the fraternal lodge, its lessee. While petitioner's general manager was present at the start of the meeting, he left the room before any indication was given of the impropriety of the performance that was to follow.

Respondent relies chiefly on two facts to support an inference of knowledge by petitioner. The chairman of the entertainment committee of the fraternal organization, who gave a short talk prior to the performance, concluded by cautioning the audience against applause or loud talking and instructed them to signify their approval only by snapping their fingers. If petitioner's manager had heard this statement, petitioner might be chargeable with knowledge of the type of performance that was to follow. The record demonstrates, however, that he did not. On direct examination by Lieutenant Deutsch of the division of licenses, the police officer testified:

'' [The Chairman of the Entertainment Committee] told them about the kind of affairs they would have to entertain members and that they would have a good time and would have a drive to get new members. As he was talking, I noticed Mr. Albanese [petitioner's manager] start for the door and with him was an unknown man and I saw them leave by the door at the main entrance. After the Chairman of the Entertainment Committee said, ' by the way fellows, you can't applaud, you have to snap your fingers.'

'' Q. Who said that? A. The Chairman of the Entertainment Committee. He said ' you must only snap your fingers ', and with that he introduced Mr. Siegel.''

While this testimony indicates that Albanese left before the statement was made, any ambiguity was removed on cross-examination where the witness testified:

'' Q. Mr. Albanese as you say, walked out before the Chairman of the Entertainment Committee introduced the Master of Ceremonies? A. He did.

'' Q. Before the Chairman of the Entertainment Committee was through with his talk? A. That's right.''

There is, therefore, no basis for any finding that Albanese was present when the chairman of the entertainment committee requested those present not to applaud but to snap their fingers.

It is true that Albanese himself was not called as a witness at the hearing. It is clear, however, that based upon the police department's affirmative case no knowledge tending in any way

to show the character of the performance about to be given was ever brought home to the petitioner. Petitioner's attorney stated on the record that he did not plan to call Albanese as a witness because he did not think it necessary. Lieutenant Deutsch stated to Chief Berkery, the deputy chief inspector who conducted the hearing, that: " If the licensee doesn't wish to call Joseph Albanese as a witness, we will not do so. I will hold a separate hearing on him in connection with his cabaret employee's identification card and I think we shouldn't prejudice the licensee in this hearing by bringing that issue in."

On the record as a whole, it cannot be said that the failure to call Albanese should operate in any way to the prejudice of the petitioner.

The second element relied upon to attribute knowledge to petitioner was the fact that nonmembers were required to pay an admission charge at this meeting. While such charge would indicate that there was to be special entertainment, it would in no way put petitioner on notice that such entertainment was to consist of indecent and immoral acts. Particularly is this true where the entertainment was being given by a constituent lodge of one of a well-known national fraternal order.

The learned dissenting opinion states that this is not the first breach of moral decency by this petitioner. This statement apparently is based upon the following language in the affidavit of the Fourth Deputy Police Commissioner George Mitchell: " The records of the Police Department indicate that the licensee under its present management has been guilty of a similar violation occurring on April 19, 1944, at which time the license was suspended for two days for obscene language during the conduct of a performance."

At the hearing, however, the only reference to this alleged prior violation was made by the president of the petitioner who testified that in 1944, when petitioner was operating the premises as a night club, the following had occurred: " I happened to book a show the way we would through agents and there was some complaint. I don't know what happened and I was summonsed here. They used obscene or improper expressions or words in the show. I was questioned by Commissioner O'Leary and I told him how I engaged shows, taking them from night clubs for a week or two weeks and also how I was engaged in the kitchen as well as the office. I did my part to supervise the place and I can say very proudly that I had one of the nicest night clubs in Brooklyn."

Petitioner's president further testified on cross-examination that its license had been suspended for two days, but that execution of the sentence had been suspended; this fact was conceded by the police department in its answer. It is to be noted that execution was suspended " pending the future conduct of the cabaret." Apparently, in the seven years between that violation and the present one, petitioner's conduct was unexceptionable. We do not believe that the occurrence of these two incidents during eleven years of petitioner's operation raises any inference that petitioner impliedly consented to the use of its premises for an indecent performance or that it failed to exercise proper supervision over its lessees. There is no substantial basis in fact or in law for the action taken by the police commissioner.

The revocation of petitioner's cabaret licenses should be annulled and the police commissioner directed to reinstate such licenses. Settle order.

Dore, J. (dissenting). The exhibition staged at petitioner's licensed premises on the night in question was concededly indecent, and the sole issue is whether there is any substantial evidence of notice or information on the part of petitioner, a corporation licensee of the cabarets in question, of the matter that was the basis of the complaint herein.

The testimony of petitioner's president was that he did not know anything about the performance; that he seldom visited the premises; that he goes there sometimes once a week or twice a week or " sometimes once or twice a month "; and that he is not active in the business. If such practice were controlling, it would only be necessary for the owner of a cabaret to absent himself from his place of business and thus avoid any responsibility for the type of entertainment conducted there, or any penalty following violations however serious. Of course that cannot be the rule applicable.

Petitioner's manager was present and in the hall in question on March 19, 1951. One of the police officers who was present testified that the manager was in the hall within the period of time " in which the Chancellor and the Chairman of the entertainment committee were giving their talks " and that he started to leave by the door at the main entrance after the chairman of the entertainment committee made the following announcement: " You know what you are all here for and I must caution you that there will be no applause or no loud talking * * * if you like what you see snap your fingers." Police officers also testified that they obtained admission by paying admission

fees at the main entrance though they were not members of the lodge in question, Century Lodge, #641 Knights of Pythias, and accordingly the occasion was not an ordinary meeting of the members of the lodge. It was also shown that the public could gain entrance to the meeting by entering from the rear of the premises through the kitchen on payment of a fee of $1 to an employee of petitioner. A police officer, a witness at the hearing, stated that one of the officers of the meeting spoke about a membership drive they were having and told about future meetings and then introduced " the Chairman of the Entertainment Committee ". On the record there is ground for a fair inference that this happened before the manager left. There is, therefore, substantial evidence to show that the manager sought to avoid responsibility for the type of " entertainment " that was afforded by leaving the hall immediately before the objectionable acts occurred.

The manager was also present at the hearing before the deputy commissioner. His testimony would obviously have shed light on whether he, as manager, had any information or notice of what the lodge had arranged for this occasion. The prosecutor directly asked petitioner's attorney if he intended to call the manager and the attorney stated he did not. Such deliberate refusal to call a witness present and within petitioner's control was a fact that respondent could properly consider. Petitioner cannot avoid the consequences of its failure to call the manager to testify (*Perlman* v. *Shanck*, 192 App. Div. 179, 183; *Milio* v. *Railway Motor Trucking Co.*, 257 App. Div. 640, 642; *Group* v. *Szenher*, 260 App. Div. 308, 310, affd. 284 N. Y. 741).

Personal knowledge of the petitioner or its officers is not essential. It is sufficient if the circumstances are such that the licensee is reasonably chargeable with failure properly to supervise the cabaret and prevent an occurrence such as the one herein which was almost unbelievably indecent, degraded and degrading.

This was not the first breach of moral decency by this licensee. The licensee under its present management was found guilty of a similar violation in 1944 at which time the license was suspended for obscene language during the conduct of a performance.

The record indicates the licensee's unwillingness to face the serious duty and responsibility with reference to proper supervision of the operation and conduct of the premises. There was substantial evidence warranting revocation of the licenses.

Accordingly, I dissent and vote to confirm determination of respondent and to dismiss the petition, with costs.

PECK, P. J., VAN VOORHIS and SHIENTAG, JJ., concur in *Per Curiam* opinion; DORE, J., dissents and votes to confirm determination in opinion in which HEFFERNAN, J., concurs.

Determination annulled, with $50 costs and disbursements to the petitioner, and the police commissioner is directed to reinstate petitioner's licenses. Settle order on notice.